# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

v.

                                 No. CIV 12-744 JCH/LFG
                                 No. CR 10-2846 RB

MARIA ISELA CHAVEZ-MARQUEZ,

       Defendant/Movant.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1.     On July 10, 2012, Movant Maria Isela Chavez-Marquez ("Chavez Marquez") filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, and a separate supporting memorandum. [Docs. 1, 2.] On August 2, 2012, the United States filed a response [Doc. 7]; on August 16, 2012, Chavez-Marquez filed a reply. [Doc. 8.] Chavez-Marquez currently is incarcerated at the Carswell Federal Medical Center in Fort Worth, Texas. [Doc. 1.]

2.     In making its findings and recommendation on this matter, the Court examined all of the pleadings and attachments in this civil proceeding and the related criminal case [No. CR 10-

---

[1]Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed. *See, e.g.,* Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).

2846 RB],[2] and reviewed transcripts of the pertinent criminal proceedings and hearings before the District Court Judges. After carefully considering the pleadings, attachments, argument by parties and the pertinent law, the Court recommends that Chavez-Marquez's § 2255 motion be denied and dismissed, with prejudice. Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Chavez-Marquez is not entitled to relief, the Court concludes that no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255; United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000), *cert. denied*, 532 U.S. 943 (2001).

## Background

3.     On May 13, 2009, a Criminal Complaint and an arrest warrant were filed against Chavez-Marquez, charging her with violating 8 U.S.C. § 1326(b)(2), Reentry of a Removed Alien. [CR Doc. 1.] On May 26, 2009, the government filed a notice stating that this criminal matter was related to another criminal proceeding, United States of America vs. Lisa Maldonado,[3] a/k/a "Chela", Case No. 09-CR-95 RB. [CR Doc. 3.]

4.     On June 12, 2010, Chavez-Marquez was found in Bernalillo County, New Mexico. She was a passenger in a vehicle that was pulled over by Bernalillo County Sheriff's Office for crossing over the centerline. During the traffic stop, Officer Smith found a gun and traces of cocaine within the vehicle and traces of a drug in a bag that Chavez-Marquez claimed. In addition, Officer Smith determined that Chavez-Marquez and another passenger in the vehicle were in the United States illegally. On June 29, 2010, Chavez-Marquez was taken into federal custody. On October

---

[2]The Court refers to pleadings in the criminal case, No. CR 10-2846, as CR Doc. __. Pleadings in this civil habeas proceeding are referred to as Doc. ___.

[3]The name "Lisa Maldonado" is an alias used by Chavez-Marquez.

14, 2010, the Grand Jury returned an indictment charging her with re-entry of a removed alien

pursuant to 8 U.S.C. § 1326(a) and (b). [Doc. 7, at 2;[4] CR Doc. 20.; CR Doc. 39, attachment.]

5.    On January 31, 2011, Chavez-Marquez entered a guilty plea to the Indictment. [CR

Doc. 32.] On October 3, 2011, Chavez-Marquez was sentenced in accordance with the Presentence

Report ("PSR"), to 32 months of imprisonment, to be followed by three years of unsupervised

release.[5] [CR Doc. 43, 44.] On October 4, 2011, the Court entered Judgment. [CR Doc. 44.]

Chavez-Marquez did not appeal.

6.    On July 10, 2012, Chavez-Marquez filed this § 2255 motion.[6] [CR Doc. 58; Doc. 1.]

She alleges ineffective assistance of counsel with respect to her plea proceedings and that her guilty

plea was "constitutionally invalid." [Docs. 1, 2.]

### Analysis

### I.    ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

**A.    Legal Standard:**

7.    When a habeas petitioner challenges her guilty plea on the ground that she was

denied her Sixth Amendment right to effective assistance of counsel, she must satisfy two criteria

to show entitlement to relief.  United States v. Weeks, 653 F.3d 1188, 1200-01 (10th Cir. 2011).

---

[4]The Court observes that there are several typographical errors or misstatements in the government's response, i.e., violation of § 1329 instead of § 1326, a four-year period of supervised release instead of a three year period of unsupervised release, and that the decision of Perez-Partida was decided after Chavez-Marquez was sentenced, rather than after she had pled guilty (but before sentencing).

[5]The government's response [Doc. 7, at 2] states that Chavez-Marquez was sentenced to 32 months of imprisonment, "to be followed by four years of supervised release." The Judgment [CR Doc. 44] is somewhat confusing in that it states: "the defendant shall be on **supervised** release for a term of 3 **years unsupervised**." However, the sentencing minutes indicate the three-year release is unsupervised. [CR Doc. 43.]

[6]Again, the government refers to the wrong date and motion in its brief. [Doc. 7, at 2.]

First, she is required to show that her attorney's representation "fell below an objective standard of reasonableness." Id. (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)).  Second, she "must show that the [attorney's] deficient performance prejudiced the defense."  Id. (citation omitted).  See also Hill v. Lockhart, 474 U.S. 52, 56–58 (1985) (the two-pronged approach applies to the plea bargaining process).  To demonstrate the second prong of prejudice, Chavez-Marquez "must show that there is a reasonable probability that, but for the counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." Weeks, 653 F.3d at 1201 (citation omitted).

8.    The Court may address the performance and prejudice components in any order and need not address both if it concludes that the defendant failed to satisfy demonstrating one of the two prongs.  United States v. Gonzalez, 596 F.3d 1228, 1233 (10th Cir.), cert. denied, —— U.S. ——, 131 S.Ct. 172, 178 L.Ed.2d 102 (2010).  See also Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed," and counsel's performance does not need to be assessed.")

9.    In Strickland, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential.  An adverse result is not evidence of ineffective assistance, and a court should not second-guess counsel's representation after an adverse verdict or sentence. An attorney's performance should be evaluated from counsel's perspective at the pertinent time, giving due regard to counsel's trial tactics and strategy, and thereby eliminating any distorting effects of 20/20 hindsight.  A court must indulge a strong presumption that counsel's conduct was reasonable and could have been considered sound trial strategy.  Id. at 689.  The defendant has the burden of proof to overcome that presumption.  United States v. Cronic, 466 U.S. 648, 658 (1984).

4

**B.** **_Allegations_**:

10.     Chavez-Marquez's contentions concerning alleged ineffectiveness of her retained attorney, Joseph Riggs are unsupported and unclear.  On January 31, 2011, Chavez-Marquez pled guilty [CR Doc. 6], but asserts that she would never have pled guilty if she had understood her "Fourth Amendment rights, Miranda, or had known about Perez-Partida [United States v. Perez-Partida, 773 F.Supp.2d 1054 (D.N.M. Mar. 28, 2011)],[7] a case where the defendant's right to suppress identity evidence was harder to prove than in the present case." [Doc. 2, at 3.] Thus, her position appears to be that Attorney Riggs was ineffective for not filing a motion to suppress based on alleged Fourth Amendment violations in relation to her arrest.

11.     For example, Chavez-Marquez claims that in June 2012,[8]"[ she], her nephew and her three-year old son, were the victims of a home invasion style robbery, where [she] was beaten with a baseball bat, stabbed and a gun was put to the head of her son." [Doc. 2, at 1.] She further asserts that she called the police and provided a full statement to the police in assisting with the investigation. [Id.] Chavez-Marquez contends that during the interaction with police, a female officer "began to accuse [Chavez-Marquez] of being illegally in the country and stated her distaste for Mexican people.  This officer warned [Chavez-Marquez] that if she found out she was in the country illegally, [the officer] would arrest her." [Id.]

12.     According to Chavez-Marquez, the next day after being released from the hospital, this same female officer was present when Chavez-Marquez's vehicle was pulled over.  The officer

_____

[7]The Court does not address Chavez-Marquez's argument concerning United States v. Perez-Partida.  The outcome of Perez-Partida, even if relevant here, would not have affected Chavez-Marquez's decision to plead guilty because Chavez-Marquez pled guilty on January 31, 2011 [CR Doc. 6], several months before the District Court issued its decision in Perez-Partida.

[8]Chavez-Marquez may mean June 2010 since she was still incarcerated as of June 2012.

purportedly walked up to Chavez-Marquez, "stating that she had the immigration officials on her cell-phone and they wanted to talk to [Chavez-Marquez]." The officer also supposedly reminded Chavez-Marquez of the officer's previous promise to arrest her. Chavez-Marquez claims she was taken to jail and that immigration officials, without providing her *Miranda* rights, began to question her about her immigration status and then took her fingerprints. As a result, Chavez-Marquez states she was charged in the underlying criminal case and sentenced to 32 months of imprisonment, which will end in October 2012.[9]

13.     When Chavez-Marquez retained Attorney Riggs to represent her on the charges of illegal reentry, she states she explained how the stop and arrest came about and that Attorney Riggs "promised that the charges would not go through and he would assist in suing the officer involved in violating her civil rights." [Doc. 2, at 2.] Chavez-Marquez did not supply any supporting affidavit testimony by Riggs. Chavez-Marquez asserts that a review of the record shows that Attorney Riggs did not file any motions in the case.[10]

14.     Because Attorney Riggs failed to raise the possible Fourth Amendment issues concerning the stop and arrest of Chavez-Marquez, the movant asserts that her guilty plea was not made voluntarily, knowingly, or intelligently. Chavez-Marquez also claims that a police report and hospital records provided to the court prove that she had been a victim of a crime on the day she first encountered the female police officer. [Doc. 2, at 3-4.]

15.     The Court cannot confirm any of Chavez-Marquez's allegations concerning the events leading up to her arrest, including the purported "home invasion style robbery," during which

[9]Chavez-Marquez alleges that she is requesting that a "U-visa" be granted. [Doc. 2, at 4.]

[10]Attorney Riggs did file motions and pleadings in the criminal proceeding, but did not file a motion to suppress.

Chavez-Marquez was "beaten with a baseball bat, stabbed and a gun was put to the head of her son." [Doc .2, at 1.] The police report, describing Chavez-Marquez's arrest on June 12, 2010,[11] states that an officer was on patrol when he or she observed a vehicle traveling south bound on Isleta Blvd. in Albuquerque that crossed the painted inside line divider and then crossed the outside shoulder painted divider. [CR Doc. 39-1, Ex. A.] The officer pulled over the vehicle and asked the male driver for his driver's license, etc. The driver appeared nervous. There were two occupants in the car, including Chavez-Marquez. The officer issued a warning citation for the driver who did not have current insurance on the vehicle and a verbal warning for failure to maintain lanes. The officer began to walk away from the vehicle and then re-approached to ask the driver if he would consent to a search of the car. The driver consented. The occupants were not handcuffed and were advised they could leave at any time. The officer located crack/cocaine in the car and a loaded 9 mm Beretta pistol under the passenger seat. Additional residual amounts of cocaine were found in a duffel bag in the car's trunk, along with female clothing and $541.00 in U.S. Currency, all in $1 bills. Chavez-Marquez claimed possession of the bag and currency. According to the officer's police report, all occupants in the vehicle were read their Miranda rights, and each claimed no knowledge of the narcotics or the firearm. The police report further states "[i]t was learned that both Chavez and Ayala-Moreno were illegally in the United States and Immigration Customs Enforcement (ICE) agents were notified. An INS detainer was placed on both for possible deportation." [Id.] Another officer's report states he or she assisted the deputy in the consensual search of the vehicle. [Id., 39-1, at 6.] The police report says nothing to confirm Chavez-Marquez's allegations concerning her version of the arrest.

---

[11]While apparently arrested on about June 12, 2010, Chavez-Marquez was taken into federal custody near the end of June 2010.

7

16.     The Court also reviewed Chavez-Marquez's numerous medical records that were attached to a sentencing memorandum and addendum. [CR Doc. Nos. 35, 36, attachments (sealed).] None of the medical records around the time of the June 2010 arrest, or later, indicate an alleged stabbing or beating of Chavez-Marquez although Chavez-Marquez was treated for a number of medical problems, including heart issues and an abnormal mammogram.

17.     Moreover, the PSR in No. CR 10-2846 indicates that ICE agents received information as early as the Summer of 2008, that Chavez-Marquez illegally reentered the United States, after being removed in 2005, and was residing in Santa Fe, New Mexico.  Agents confirmed Chavez-Marquez was living in Santa Fe through May 2009.  According to the PSR, Chavez-Marquez was arrested on June 29, 2010 on a warrant for her arrest and taken into custody.  It was further revealed that Chavez-Marquez's earlier removal was subsequent to a conviction in 2001 for conspiracy to possess with intent to distribute cocaine base and heroin.  In 2002, Chavez-Marquez was sentenced to 60 months imprisonment. [PSR, at 2.]  With respect to the charges brought against Chavez-Marquez in No. CR 09-95, where she was charged with conspiracy to import 100 kilograms or more of marijuana, those charges were dropped on February 15, 2011.  The PSR indicates there were no current medical issues reported in any documents received from the United States Marshals Service.  As of the date of the PSR, March 10, 2011, Chavez-Marquez reported she was in good mental health.  There simply is no confirmation in the extensive records and pleadings relating to Chavez-Marquez's criminal proceedings of her version of the alleged events leading up to her arrest.  Indeed, the warrant for her arrest was issued as early as 2009 [CR Doc. 84 in No. CR 09-95], about a year before her arrest, in contrast to her version of events where she was robbed and beaten one day and arrested the following day.

18.     Chavez-Marquez fails to identify what grounds, if any, would have supported a motion to suppress based on alleged Fourth Amendment violations related to her arrest. In Kimmelman v. Morrison, 477 U.S. 365, 374 (1986), the United States Supreme Court explained:

> The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure. *See, e.g.*, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In order to prevail, the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the item or place at issue. *See, e.g.*, Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).

Chavez-Marquez does not provide any evidence of an "illegal search or seizure." The police report documents the search of the vehicle as being consensual and that Chavez-Marquez was free to leave at the time of the search. Chavez-Marquez claimed ownership of the bag in the vehicle that was found to have traces of a drug in it, as well as currency. While she summarily states she was not read her *Miranda* warning, the police report is to the contrary.

19.     The case on which Chavez-Marquez relies, Perez-Partida, 773 F.Supp.2d at 1059, is of no assistance to her because unlike the facts of this case, the government conceded in Perez-Partida that the stop of the vehicle was not supported by a reasonable suspicion of criminal activity and that the subsequent warrantless search of the car violated the defendant's Fourth Amendment rights. The district court ultimately concluded that the government failed to meet its burden of proving that the identity evidence it sought to introduce was not "fruit of the poisonous tree," and thus, suppressed the identity evidence. Id. at 1068. In other words, contrary to the facts in Perez-Partida, there was no concession of an illegal or "indefensible" arrest in this case, from which it might follow that the identity evidence had to be suppressed as fruit of the poisonous tree. Thus, under the circumstances, Chavez-Marquez did not demonstrate deficient performance of counsel for failure to file an unsupported motion to suppress.

9

20.     In addition, or alternatively, Chavez-Marquez failed to demonstrate prejudice with respect to her claim of ineffective assistance of counsel. She summarily argues she would not have pled guilty, but does not state she would have insisted on going to trial. *See, e.g.,* United States v. Jameson, 2012 WL 2402650, at *1 n. 6 (10th Cir. June 27, 2012) (unpublished) (petitioner did not assert "reasonable probability that, but for counsel's [actions or omissions], he would not have pleaded guilty and would have insisted on going to trial," a necessary part of any showing of prejudice.) (citation omitted).

21.     Furthermore, she failed to acknowledge the significant benefits she received from having pled guilty to the charges in No. CR 10-2846, as weighed against the risks of a much longer period of incarceration she faced if she had proceeded to trial. Chavez-Marquez came before the Court, having been twice convicted of felony cocaine trafficking offenses. [CR Doc. 39, at 1.] If she had gone to trial and been convicted, her offense level would have been 24, without a downward adjustment for acceptance of responsibility. An offense level of 24 combined with her criminal history category of III would have resulted in a guideline imprisonment range of 63 to 78 months. In the government's response to Chavez-Marquez's sentencing memorandum, the government argued that a guideline sentence of 41-51 months was "the only just and reasonable sentence" to impose. [CR Doc. 39, at 1.] Instead, in accordance with the plea agreement, her total offense level was 20, and she was sentenced to a total period of incarceration of 32 months. Thus, her exposure to incarceration was substantially reduced, and she greatly benefitted by entering in the plea agreement. In addition, the charges against Chavez-Marquez were dropped in No. CR 09-95.

22.     For these reasons Chavez-Marquez cannot show she was prejudiced by her attorney's failure to file a motion to suppress, particularly where she provided no grounds to show a motion to suppress would have been successful and where the plea agreement greatly benefitted her.

10

Accordingly, any claim of ineffective assistance of counsel with respect to Attorney Rigg's failure to file a motion to suppress is unsupported and must fail.

## II.    ALLEGED INVALID GUILTY PLEA

### A.    *Legal Standard*:

23.    In United States v. Hahn, 261 F. App'x. 90, 92 (10th Cir. Jan. 15, 2008) (unpublished), the Tenth Circuit advised that "[a] defendant's guilty plea must be knowing, voluntary, and intelligent. (*citing* United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002)). This standard is satisfied only if the defendant has "a full understanding of what the plea connotes and of its consequences." Id. (*quoting* Boykin v. Alabama, 395 U.S. 238, 244 (1969)). A guilty plea will be found void if it was "induced by promises ... which deprive it of the character of a voluntary act." Wellnitz v. Page, 420 F.2d 935, 936 (10th Cir. 1970) (quotation omitted).

24.    A defendant may attack the voluntariness of the plea by showing ineffective assistance of counsel when the defendant enters a guilty plea on the advice of counsel. Hill, 474 at 56-57. Here, Chavez-Marquez argues that she did not voluntarily or knowingly enter into her plea agreement because Attorney Riggs' "ineffectiveness makes the guilty plea, plea agreement and its waivers constitutionally invalid." [Doc. 2, at 4.] The only argument Chavez-Marquez made with respect to alleged ineffective assistance of counsel concerned the failure to raise possible Fourth Amendment violations in relation to a motion to suppress. The Court already found *supra* that Chavez-Marquez failed to meet the Strickland requirements with respect to the ineffective assistance of counsel claim. Thus, the argument that her guilty plea was invalid due to ineffective assistance of counsel fails, as there was no ineffective assistance of counsel. Notwithstanding her failure to show ineffective assistance of counsel, the Court examines whether Chavez-Marquez's guilty plea was knowing, voluntary, and intelligent.

11

25.     In the plea hearing, conducted on January 31, 2011 by Magistrate Judge Lourdes A. Martinez,[12] Chavez-Marquez was represented by counsel, and a Spanish-language interpreter was present. [Doc. 6; CR Doc. 61.] Judge Martinez carefully explained the plea proceeding process to Chavez-Marquez and advised her that it was important Chavez-Marquez understood everything the judge was explaining to her. [Doc. 6, at 3.] Judge Martinez informed Chavez-Marquez that she had the right to plead not guilty and to proceed to a jury trial, where she could present evidence and compel the testimony of witnesses.  Judge Martinez further stated that by pleading guilty there would be no trial and that Chavez-Marquez would give up the rights to a trial by pleading guilty. [Id. at 5, 9.]  Chavez-Marquez testified that she understood that she was giving up the rights associated with a trial if she pled guilty. [Id. at 9.]

26.     Before taking her plea, Judge Martinez asked if Chavez-Marquez could understand Spanish all right, to which Chavez-Marquez responded she could.  Chavez-Marquez testified under oath that she was not under the influence of any drugs or alcohol and that she was feeling well enough to proceed in court that day. [Id. at 6-7.] Chavez-Marquez testified that she had ample time to discuss the charges and defenses to charges with her attorney, that he had answered all her questions to her satisfaction, and that she was pleased with the advice and representation of Attorney Riggs. [Id. at 8.] She voiced no complaints about any alleged deficient performance.

27.     Judge Martinez then fully explained that Chavez-Marquez was charged with the felony offense of reentering the United States illegally after a previous removal; Chavez-Marquez stated she understood the charge. [Doc. 6, at 10.] The government prosecutor explained to Chavez-

---

[12]On January 31, 2011, Chavez-Marquez signed a written agreement to proceed with her guilty plea before a Magistrate Judge rather than a District Judge. [CR Doc. 30.] "I consent to entering my plea, knowingly and voluntarily, before a United States Magistrate Judge." [Id.; see also Doc. 6, at 9.]

Marquez the maximum penalty of up to 20 years in prison, including a monetary fine. Chavez-Marquez stated she understood the maximum penalties. [Id.] Thus, Judge Martinez took great care to ensure Chavez-Marquez knew the charges and the maximum possible sentence that could be imposed upon a conviction.

28.     Judge Martinez informed Chavez-Marquez that in addition to those maximum penalties, Chavez-Marquez's guilty plea would make it "almost certain you will be deported from this country and not be allowed to return again illegally without facing further and more serious federal charges." [Id.] Chavez-Marquez again testified she understood this consequence as well. [Id. at 10-11.]

29.     The transcript of the plea hearing provides the following exchange:

Court:          Before I can accept your plea, I need to make sure it's going to be voluntary. Except for what is contained in your plea agreement, did anybody promise you anything else in order to get you to plead guilty today?

Chavez-Marquez:     No, ma'am.

Court:          Is anyone forcing you to plead guilty today?

Chavez-Marquez:     No, ma'am.

Court:          Are you pleading guilty of your own free will?

Chavez-Marquez:     Yes, ma'am.

[Id. at 12.] Judge Martinez proceeded to discuss the plea agreement which Chavez-Marquez had earlier signed. Chavez-Marquez testified that the plea agreement was read to her in her native language, Spanish, and that her attorney had discussed the agreement with her and explained it to her satisfaction. Chavez-Marquez further testified that she had signed the plea agreement voluntarily and understood "each and every provision fully and completely. . . ." Chavez-Marquez also stated she had gone over the federal sentencing guidelines with her attorney and understood that

the sentencing judge could disagree with her attorney and impose a harsher sentence than her attorney estimated she might receive. [Id. at 13-14.]

30.     Magistrate Judge Martinez then asked Chavez-Marquez's attorney if he had reviewed the pertinent sentencing guidelines with Chavez-Marquez. Attorney Riggs testified he had and that he believed it was reasonable for Chavez-Marquez to plead guilty in this case based on the facts, circumstances and the government's ability to prove its case. Counsel for Chavez-Marquez estimated the guideline range to be 63-78 months, although she received a much reduced sentence of 32 months. [Id. at 14-15.] Attorney Riggs further explained there was no bar for a downward departure and there were "some other things that are going to be going on" that made the "plea []" in her interests because it gives her the possibility of the lowest possible sentence." [Id. at 15.] Judge Martinez asked Attorney Riggs about whether Chavez-Marquez's appeal and habeas rights. Attorney Riggs explained that she agreed to give up her right to appeal and agreed not to collaterally challenge at any time in the future her conviction or sentence. However, she was preserving her right to file a habeas claim under 28 U.S.C. § 2255 for ineffective assistance of counsel related to the plea process. Chavez-Marquez testified that she understood all of this discussion and the provisions of the plea agreement. [Id. at 15-16.]

31.     The government prosecutor explained that because there was a separate pending indictment against Chavez-Marquez for a drug conviction, the government removed the normal provision of the plea agreement stating that the government was not going to prosecute Chavez-Marquez for any crimes arising out of the facts of this plea. [Id. at 16-17.] Chavez-Marquez testified that she understood this and all of the benefits of the plea agreement. [Id. at 17-18.]

32.     Judge Martinez asked Chavez-Marquez to listen very carefully to the factual basis of the crime that the prosecutor was going to recite and informed Chavez-Marquez she would have

14

the opportunity to agree or disagree with the facts. The prosecutor recited the facts leading up to Chavez-Marquez's arrest in June 2010, and Chavez-Marquez agreed the facts were true. She further testified she was a citizen of Mexico, who was previously deported in 2005, and that she had returned to the United States illegally. She then pled guilty. [Id. at 18-20.]

33.    The Court found that Chavez-Marquez was fully competent and capable of entering into an informed plea, she was aware of the charge she faced and the consequences of her plea, she entered into a plea of guilty that was knowing and voluntary, and her guilty plea was supported by an independent basis in fact containing each of the essential elements of this crime. [Id. at 21.]

34.    Chavez-Marquez had an opportunity throughout the plea hearing to voice any concerns with the resolution of her case and the plea agreement, but did not identify any problem.

35.    Chavez-Marquez's written plea agreement reflects much of what was discussed during the plea hearing. [CR Doc. 30.] On January 31, 2011, Chavez-Marquez signed the agreement that includes the following statement:

> VOLUNTARY PLEA
> 15. The defendant agrees and represents that this plea of guilty is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement. The defendant also agrees and represents that there have been no representations or promises from anyone as to what sentence the Court will impose in this case. The defendant also represents that the defendant is pleading guilty because the defendant is guilty.

[Id. at 5.] In addition, Chavez-Marquez signed the agreement below the following paragraph:

> This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been given to me other than those contained in this

agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

[Id. at 6.] Attorney Riggs signed under a similar paragraph noting his discussion of the above-described terms and of the consequences of the plea agreement. "To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one." [Id.]

36. Chavez-Marquez did not present any evidence that her guilty plea was the result of material misrepresentations made to her, promises that she would receive a sentence far shorter than the sentence actually imposed, false promises or guarantees, or any confusion or misunderstandings she had concerning the plea agreement. Chavez-Marquez does not argue that she did not understand the consequences of her plea, and moreover, she readily agreed to factual basis for charges.

37. The Court concludes that under the circumstances of this case, Chavez-Marquez's guilty plea is valid and that she voluntarily, knowingly, and intelligently entered into the plea agreement.

## III. REQUESTS FOR APPOINTMENT OF COUNSEL AND BAIL HEARING IN REPLY

38. In Chavez-Marquez's "Rebuttal Response" [Reply], she sets out the same arguments reviewed and rejected above with respect to alleged ineffective assistance of counsel and the validity of her guilty plea. For example, she again asserts that she was unlawfully arrested "less than 24 hours after reporting the robbery," [Doc. 8, at 1] and that she provided the Court with evidence to support her claims, including "the police report of the robbery." [Id., at 3.] However, Chavez-Marquez did not supply the purported police report as part of this § 2255 proceeding and the Court did not locate the police report in the related criminal proceedings. As noted above, the evidence supplied in relation to her arrest contradicts Chavez-Marquez's version of her arrest. Moreover, she fails to demonstrate either ineffective assistance of counsel or that her guilty plea was invalid.

16

39.    In addition, the reply [Doc. 8] is improper for a number of reasons. First, Chavez-Marquez sets forth a number of separate requests in a single pleading, including a request for appointment of counsel and a request for a bail hearing. This is not permitted. The Court's Administrative Order No. Misc. 92-88 requires parties to submit a separate pleading for each matter upon which a ruling of the Court is sought. Second, Chavez-Marquez submitted requests in her reply that were not presented in her original motion. Thus, the government was not given an opportunity to respond to all of the requests. This, too, is improper. See, e.g., United States v. Brazier, 1997 WL 833293, at * 1 n.3 (D. Kan. Dec. 11, 1997) (unpublished) (denying request on the sole basis that it was improper to raise new arguments for the first time in a reply brief), pet. denied, 1998 WL 80367 (D. Kan. Jan. 5, 1998).

40.    Notwithstanding these deficiencies in Chavez-Marquez's reply, the Court elects to briefly address the requests for appointment of counsel and bail hearing. A request for appointment of counsel at this stage of the proceedings, i.e., where the Court recommends dismissal of the action, is essentially moot. However, even if not considered moot, the Court sets forth the following standard concerning appointment of counsel in habeas proceedings.

41.    Factors the Court weighs when considering a motion for appointment of counsel include "'the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present [her] claims, and the complexity of the legal issues raised by the claims.'" Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995) (quoting Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991)). In considering Chavez-Marquez's request for appointment of counsel, the Court has carefully reviewed all of the pleadings and exhibits filed in this proceeding and concludes that Chavez-Marquez understands the issues in the case and appears to be representing herself in an intelligent and capable manner. Moreover, the legal issues raised in the case are those

typically considered by courts in habeas proceedings and are not deemed unusually complex. Thus, Chavez-Marquez fails to provide sufficient grounds for appointment of counsel. Accordingly, the Court recommends that the request be denied.

42.     With respect to Chavez-Marquez's motion for bail hearing, she argues that she is scheduled for release in less than two months. Thus, she asks that the Court release her pending adjudication of her § 2255 motion. She further asserts that special circumstances warrant her release on bail. [Doc. 8, at 4-5.]

43.     The Court observes that in the underlying criminal proceeding, Chavez-Marquez filed a motion for bail hearing pending resolution of the § 2255 motion she intended to file at that time and appointment of counsel to assist her in filing a § 2255 motion. [CR Doc. 47.] On June 15, 2012, the Honorable Robert C. Brack denied both requests. The Court observed that "noncapital defendants have no [] right to appointment of counsel in federal habeas corpus proceedings . . . ." [CR Doc. 47, at 1] and directed the Clerk to provide Chavez-Marquez with § 2255 forms.

44.     With respect to the request for a bail hearing or release, the District Court noted Chavez-Marquez's arguments that her arrest allegedly violated Fourth Amendment protections but further observed that "[t]he power to grant bail to a § 2255 defendant is 'to be exercised very sparingly,' . . . , and only in 'exceptional circumstances . . . .'" [CR Doc. 47, at 2] (citations omitted). The Court concluded that Chavez-Marquez's allegations did not show "exceptional circumstances warranting special treatment." [Id.]

45.     Nothing has changed since Chavez-Marquez filed the motion for bail in the related criminal proceeding that was denied. In other words, she fails to provide allegations of exceptional circumstances or to demonstrate that her habeas motion is likely to succeed. Indeed, based on the Court's recommendation to deny and dismiss Chavez-Marquez's § 2255 motion, her motion is

18

unlikely to succeed. In addition, a district court's denial of a defendant's motion to reduce bail is part of the criminal proceeding and is not reviewable in separate habeas action. *See* <u>Sell v. United States</u>, 539 U.S. 166, 175 (2003). For all of these reasons, the Court recommends that Chavez-Marquez's separate requests in her reply be denied.

## Recommended Disposition

That Chavez-Marquez's claims of ineffective assistance of counsel and involuntary or invalid guilty plea be denied; that Chavez-Marquez's request for appointment of counsel and bail hearing be denied; and that her § 2255 motion and this matter be dismissed, with prejudice.

That under Rule 11 of the Rules Governing Section 2255 cases and 28 U.S.C. § 2253(c)(2), a certificate of appealability not issue because Chavez-Marquez failed to make a substantial showing that she has been denied a constitutional right.

Lorenzo F. Garcia
United States Magistrate Judge